Peggy M. CHAVIN, I. Favel Chavin, and
James P. Quinn, Plaintiffs Below, Appellants,

v.

Beatrice A. COPE, Defendant Below, Appellee.

Supreme Court of Delaware.

May 10, 1968.

Harvey Porter, Wilmington, for appellants.

Richard I. G. Jones of Prickett, Ward Burt & Sanders, Wilmington, for appellee.

WOLCOTT, C. J., and CAREY and HERRMANN, JJ., sitting.

WOLCOTT, Chief Justice.

This is an appeal from the Superior Court's denial of plaintiffs' motion to set aside verdicts in their favor and for a new trial.

■■ In an appeal from either the grant or denial of a new trial the sole question for determination is whether or not the action of the trial court constitutes an abuse of sound judicial discretion. Trowell v. Diamond Supply Co., 8 Terry 422, 91 A.2d 797. When an act of judicial discretion is under review the reviewing court may not substitute its own notions of what is right for those of the trial judge, if his judgment was based upon conscience and reason, as opposed to capriciousness or arbitrariness. Pitts and Coker v. White, 10 Terry 78, 109 A.2d 786.

The plaintiffs assert several matters as reasons for a new trial.

1. The refusal of the trial judge to permit the asking of certain questions of prospective jurors on *voir dire* examination.

2. The refusal of the trial judge to exclude from evidence defendant's Exhibit No. 2.

3. The refusal of the trial judge to instruct the jury as specifically requested by the plaintiffs.

4. The inadequacy of the verdicts.

We will take up the various reasons in the order stated, setting each out more fully as we do so.

This action is one for personal injuries arising out of an automobile accident. The particular circumstances of the accident are not particularly important in this appeal. We will not state them, but will, where necessary, refer to them in our consideration of the various questions presented.

*The refusal to permit the asking of certain questions on voir dire examination of prospective jurors.*

The plaintiffs requested that the panel of prospective jurors be asked the following questions:

1. Are any of you employed by or stockholders in an insurance company which is engaged in the casualty insurance business?

2. Are any of you engaged in the general insurance agency business or are any of you agents for a casualty insurance company?

3. Have any of you ever worked as a claims investigator or insurance adjuster?

4. Are all of you able to render a fair and just verdict in this case without regard to the economic or social positions of any of the parties?

5. Do any of you feel for any reason, including religious, ethical or moral reasons, that you would not be able to render a fair and just verdict on the basis of the evidence as presented, if such verdict involved a substantial amount of money?

6. Do any of you have any religious, moral or ethical feelings that would prohibit you from compensating a person for pain and suffering by the award of money damages?

In addition, counsel for the plaintiffs requested, if questions Nos. 1, 2 and 3 were asked, that the trial judge make it clear to the jury panel that the asking of the questions did not imply either that the defendant is insured or that the matter of insurance or lack of insurance was to be considered by the jury in reaching a verdict.

The *voir dire* examination of the jury panel under Civil Rule 47(a), Del. C.Ann. is conducted by the trial judge alone, but counsel are permitted to ask the trial judge to examine the jurors as to certain matters. The trial judge, under the rule, may put the questions if, in his opinion, they are directed toward a proper subject of inquiry. Under the rule, therefore, the matter is left to the sound discretion of the trial judge.

We turn initially to questions Nos. 1, 2 and 3, which obviously were designed to determine whether or not any prospective juror was associated with, or had in the past been associated with the casualty insurance business.

It has long been the rule in Delaware that mention of liability insurance in an automobile collision case is prejudicial to the defendant. Blatz v. Wilson, 5 W. W.Harr. 546, 170 A. 808; Lord v. Poore, 9 Terry 595, 108 A.2d 366. However, the mention of insurance does not *ipso facto* require a mistrial. Ordinarily, an appropriate instruction to disregard the statement is sufficient to avoid prejudice to the defendant, but an incident may be so flagrant as to require a mistrial. The question is always one for the sound discretion of the trial judge.

In the case at bar there was no reference during the trial to insurance owned by the defendant. Nor was there anything at all to show a possible connection between any juror and any casualty insurance company. Furthermore, each prospective juror is required to fill out a questionnaire which, among other things, sets out the juror's employment. This ques-

tionnaire is open to the inspection of the parties.

■ . We think questions Nos. 1, 2 and 3 are obviously designed to make the jurors aware that the defendant was insured. Under our law, knowledge of this fact is held to be prejudicial to a defendant. To be sure, in some instances that prejudice can be overcome by an appropriate instruction. The plaintiffs requested that such an instruction be given.

We think, however, that the requested instruction immediately following the three questions would serve not to eliminate any possible prejudice, but to point up and impress upon the jurors that the defendant was in fact insured.

The requested procedure, in advance of the drawing of the trial jury, it seems to us, differs sharply from the inadvertent blurting out by a witness of the fact of insurance coverage. The latter prejudice may well be cured by an appropriate instruction. At the outset of a trial, however, for the judge to question the jurors in a manner designed to bring out the prejudicial fact of insurance coverage of the defendant is an entirely different matter. Irrespective of whether or not the requested instruction would cure any prejudicial effect, the trial judge should not, by his own action, introduce a possible prejudicial fact into the jurors' minds.

In any event, the request was addressed to the trial judge's discretion. He rejected it and, in so doing, clearly did not abuse his discretion.

■ Plaintiffs, however, argue that it was necessary for them to know the answers to their proposed questions in order to exercise their right to challenge jurors peremptorily. They rely upon Kiernan v. Van Schaik, 347 F.2d 775, a decision of the Court of Appeals, 3rd Circuit, reversing the District Court for refusal to ask almost identical questions of prospective jurors upon the ground that the desired information was required for the intelligent exercise of the right to challenge.

We point out that most of the desired information could have been obtained from inspection of the jurors' questionnaires.*

In any event, however, we reject the Kiernan case as persuasive authority for the reason that its rule would permit a greater possibility of prejudice to a defendant than benefit to the plaintiff. We prefer the rule of Langley v. Turner's Express, Inc., 375 F.2d 296, a decision of the Court of Appeals, 4th Circuit, which expressly rejects the rule of the Kiernan case.

We turn now to questions Nos. 4, 5 and 6. Basically, the questions are directed to discovering any bias or prejudice of a prospective juror which might lead to a reluctance to award adequate damages to the plaintiffs if the proof justified a large sum of money.

We are aware that somewhat similar questions have been permitted in other jurisdictions (see Annotation, 82 A.L.R.2d 1420), although to our knowledge they have never been permitted in Delaware. Furthermore, in the decisions cited in the Annotation, the practice seems to be to allow extensive questioning on voir dire of prospective jurors by counsel. Such has never been the allowed practice in Delaware. On the contrary, Delaware Courts have consistently kept the voir dire examination of jurors to a minimum of questions put by the judges. Moreover, the type of question here requested is, in our view, too vague and uncertain to be meaningful.

■ In any event, plaintiffs' application was addressed to the discretion of the trial judge. He denied it and we cannot say that such action was clearly unreasonable or capricious. There was, therefore, no abuse of discretion on his part.

---

* We suggest to the Superior Court that it consider an expansion of the questionnaire in order to elicit such information more directly than is currently the case.

*The referral to exclude defendant's
Exhibit No. 2 from evidence.*

The plaintiffs called as an expert witness a doctor who testified as to the nature and extent of the injuries of one of the plaintiffs, and in the course of his direct examination read parts of an article in a medical publication. He testified that Mrs. Chavin, one of the plaintiffs, had a Thoracic Outlet Syndrome, and was in need of surgery. The article in question dealt with this precise condition. Those parts read by the witness dealt with the prospects of people who had the condition, and who did not undergo surgery, and with the prospects of people with the condition who underwent surgery.

Defendant's counsel used the article in cross-examination and then offered the entire article in evidence. The trial judge admitted it over the plaintiffs' objection. They rely on Drucker v. Philadelphia Dairy Products Co., Inc., 5 W.W.Harr. 437, 166 A. 796, and Barks v. Herzberg, Del., 206 A.2d 507, in support of their argument.

The two cases, however, are not in point since they stand for the proposition that an expert may be cross-examined upon recognized texts for impeachment purposes, but the text, itself, may not be admitted in evidence for the truth of the matter stated in the text.

■ In the case at bar, however, parts of defendant's Exhibit No. 2 were read by the doctor as his answers to questions on direct examination. In a sense, therefore, a portion of the exhibit was put in evidence by the plaintiffs. This being so, we think the entire article was properly admissible.

*The refusal to instruct in accordance
with plaintiffs' requested instruction.*

The plaintiffs requested the trial judge to give specifically worded instructions to the jury (1) upon loss of consortium by the husband plaintiff; (2) on sympathy for or against the parties, and (3) on the duty of the plaintiff wife to undergo surgery.

■ It is true that the trial judge did not give the precise instructions requested by the plaintiffs on loss of consortium and on sympathy for the parties. He did, however, instruct the jury upon those two subjects adequately and correctly. Since a party has no right to demand a particular instruction in particular language, no error results from a refusal to so charge when the instructions given are correct statements of the law.

■ The plaintiff wife requested that the jury be instructed that she had no obligation to undergo surgery in order to minimize damages. The trial judge refused to do so.

We think the trial judge was correct in so doing. No contention was made on the defendant's behalf that Mrs. Chavin had an obligation to have surgery so as to minimize her damages. This being the fact, the requested instruction would have been meaningless. There was no error in denying it.

*The inadequacy of the verdicts.*

The plaintiffs argue that the amounts of the verdicts in their favor are so small that as a matter of law they are inadequate. They therefore conclude that necessarily the refusal of the trial judge to give them a new trial was an abuse of discretion.

To be sure, if the jury accepted at its face value the testimony of the plaintiffs, the verdicts conceivably could have been in much larger amounts. However, there was no compulsion upon the jury to do so. It could accept or reject in whole or in part the plaintiffs' testimony and fix the amounts of recovery upon the basis of the portion of the testimony it chose to accept.

This apparently was the view the trial judge, who heard and observed the witnesses, took in denying the plaintiffs a new

trial and holding that the verdicts were not so grossly inadequate as to shock the conscience. We think the record of this trial supports this conclusion.

When this court sits in review of the discretionary acts of trial judges, we will ordinarily not reverse if the trial judge has acted in good faith and with deliberate judgment. Discretionary rulings will not be disturbed unless it clearly appears that they were based on clearly unreasonable or capricious grounds. Larrimore v. Homeopathic Hospital Ass'n of Del., 4 Storey 449, 181 A.2d 573. We find nothing in this record clearly unreasonable or capricious in the denial of a new trial because of inadequacy.

The judgment below is affirmed.